THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD CO.

*v.*

BELLE C. M. PAYZANT.

1. DAMAGES—*when excessive.* Where a young woman, in attempting to go upon a railway car, stepped into an opening in the railway platform, whereby she received an injury to her knee and leg, and it appeared that, at the trial, about three years after the accident, she had not fully recovered, but yet walked naturally and gracefully, and it was not probable the injury would be permanent, and she was not, in consequence of the injury, deprived of any business or calling by which to earn money, and it also appearing that her poor health, at the time of the injury, prevented as quick a recovery as otherwise might have been expected, and it not appearing that she had suffered any extreme pain, or the injury was serious, it was *held,* in an action against the railroad company, that $2500 damages was excessive, no vindictive damages being claimed.

2. In actions to recover for personal injuries, where the damages to be recovered are merely compensatory, the extent of the injury received is an important question, as well as in what respect the party is incapacitated from performing the ordinary duties of life, and what is the pecuniary loss, making due allowance for pain and suffering, and the amount paid for medical and surgical attendance.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Mr. THOMAS F. WITHEROW, for the appellants.

Mr. WM. ELLIOTT FURNESS, and Mr. ROBERT HERVEY, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, brought to the Cook circuit court, by Belle C. M. Payzant, plaintiff, and against the Chicago, Rock Island and Pacific Railroad Company, defendants, to recover damages for an injury alleged to have been received by reason of a defective platform at defendants' station at LaSalle. There was a trial by jury, and a verdict for the plaintiff for twenty-five hundred dollars. The court denied a motion for a new trial, submitted by defendants, and rendered judgment on the verdict, to reverse which the defendants appeal.

The principal, indeed the only point made and argued, is, the amount of damages, appellants insisting they are excessive, bearing no just proportion to the injury.

We have examined the evidence with care, and find the case to be this: The plaintiff was a young woman, about twenty-five years of age, residing with her father at Chicago, and engaged in no employment by which money was earned. She had been in poor health for a long time, and thinking a change of air and scene might be beneficial to her, she made a visit, late in the autumn of 1873, to her friend and relative, Mrs. Fraser, the wife of Dr. W. H. Fraser, then residing at LaSalle, in the county of LaSalle. For three or four years prior to this time her health, as she testifies, had been very poor, but feeling better from her visit, she, on the morning of December 15, 1873, accompanied by Mrs. Fraser, went to the depot of the appellant company, to take the train for Chicago. She went there—why, she does not explain—two hours before

train time, and when the train arrived, about one o'clock in the afternoon, she purchased a ticket, and proceeded along the platform to the cars, and in doing so stepped into a hole therein, with her right foot, and her leg went in above the knee. She was soon extricated from her uncomfortable position, and took her seat in the cars. During the trip to Chicago, which consumed about four hours of time, she suffered a burning pain, as if the leg was badly bruised, and a little as if the skin was off, and the skin was broken a little. She made no application to the bruise when on the cars, but sat still until they reached Chicago. She was met at the depot there by her father, and they proceeded together, on foot, to a bus on Van Buren street, she walking with some difficulty. In the bus they rode as far as Sophia street, and then walked west on Home street, where their residence was. The distance from the station to the bus on Van Buren street, and from there to Home street, she walked with the assistance of her father. Where they left the bus to their home was about four and a half blocks. Her father's impression was, though she complained of pain, that she was not badly injured, and he does not remember that she expressed anything particularly about much suffering during the time. She felt pain, when she got out of the bus, on the side of the knee-joint, and under the top of the knee-cap.

The principle being, in actions of this nature, where the damages to be recovered are compensatory merely, vindictive damages not being claimed, it becomes an important question, what is the extent of the injury received, in what respect does the injury incapacitate one for the performance of the ordinary duties of life, and what is the pecuniary loss. Making due allowance for pain and suffering, the amount paid for medical and surgical attendance, and awarding damages for them, what should be awarded as compensation merely?

We have examined, as to this point, all the testimony in this record, and it fails to satisfy us appellee has received any very considerable injury from the accident. Several physi-

cians were in attendance upon her, about whose skill there is no evidence; but we feel warranted in concluding, from the remedies they applied,—cooling lotions of arnica and hammamelis, with a bandage,—it was not a very serious injury. There is evidence tending to show that this leg, above and below the knee, is slightly smaller than the other leg, but not disfigured. When appellee testified, three years after the accident, she said, when she was sitting, she liked to have that limb a little higher, to make it comfortable—at home, she always has a stool. When she touches it now, it does not suffer. There is only a little soreness in it—only a little pain. Dr. Gramer, her attending physician, who makes no great pretentions to surgery, testifying as a scientific man, thinks she will be better than she is now, but has doubts as to her ultimate complete recovery. Dr. Danforth, another of her physicians, who makes pretentions to surgical skill, says some of these cases drag on for years, and others recover more rapidly than we would be led to expect—thinks she will recover in a year or two, but would not be surprised if she should not; and if she recovered in less time, he would not be surprised. Habits of body of the patient have much to do with a recovery, and, from what he knows of appellee's constitutional tendency, a recovery would be slower and more uncertain.

Dr. W. H. Fraser was examined for the plaintiff. He was the gentleman whose family the plaintiff had been visiting when the accident occurred, but who was not present at its occurrence. He examined the plaintiff a week or ten days before the trial, with a view of testifying in the case. He says the leg looked natural enough, with the exception that it was a little smaller, apparently, than the other; made a careful measurement, and found it was smaller above the knee, immediately around and below—that is to say, this leg is smaller than the other; saw no indication of disease of the joint; a slight scar on the front of the knee; no appearance of any tumor, swelling, or anything like white-swelling, or

anything like swelling about the knee; attributes the decreased size to a want of use, and a want of use to the injury; can not say there is any permanent injury to the joint, but thinks it might trouble her at almost any time, if used too much, or by irritation, and any loss of health would be likely to affect the injured part afterward; thinks complete ultimate recovery doubtful; did not know the condition of the limb before the accident; it was the knee he examined; made the measurement just above the knee-cap; inflammation would tend to increase the size of the knee, but there was no inflammation; the ligaments not being increased in size, is evidence that inflammation had not continued long; his treatment would be, keeping the patient still, and if any appliances were used, they should be of a cooling nature, and a splint, to keep the joint still, should be used; the limb looks natural, only it is a little smaller; have seen her moving about at her father's, and about the court room; have seen nothing in her movements indicating any disease of the knee; so far as can be seen, she walks naturally and gracefully; there is not any permanent injury that he could detect; she walks well enough; before she came to his house, she had poor health occasionally; thinks her health better now than then; a paralyzed limb generally shrinks, but there is no evidence of paralysis there; it requires the exertion of more power to go up, than to go down stairs.

Dr. W. F. Peck, a witness for the defendants, the surgeon in chief of the appellants, visited this lady, with Dr. Gramer, her attending physician; went to the house, and examined her knee, and found this limb not different from the opposite one; there was no inflammation, no swelling, no discoloration, no tenderness, upon pressure, from the foot up to the end of the knee.

Dr. Edmund Andrews, a surgeon of twenty-four years' practice, had not examined the case, but heard all the medical testimony, and came to the conclusion there were bruises in the flesh, both above and below the knee, and that the veins were bruised above the knee; thinks there was no injury to the

knee-joint; such a case as he supposes, from the evidence, this to be, is apt to last a number of months; should think the lady was pretty well over the active symptoms, and has merely to use it (the leg) freely, to get well entirely.

It will be seen, from the testimony, that the state of health of a person receiving such an injury as this, has something to do with a speedy recovery. Appellee testifies, at the time of the accident, her general health had been very poor for three or four years, but, at that time, she had been out in the country, and felt better; did not regard herself as a healthy woman; had been an invalid for four years; part of the time had bilious fever,—that was about five years ago; that bilious fever had left its effects on her system, up to time of the accident, and these other things connected with it; had been troubled with a numbness on the left side, which commenced after the bilious fever, and kept her down, and brought her down if she exerted herself; could not gain her strength; always necessary to be careful about the exercise she took; very easily prostrated by over-exertion.

From the whole testimony, carefully considered and weighed, it seems to us no very serious injury has been occasioned by this accident, and we think the damages are far beyond any reasonable compensation therefor. The young lady was engaged in no employment requiring the exercise of much muscular power, and her friend Dr. Fraser says there was but a slight difference in the limbs; had seen her moving about the room at her father's, and in the court room, and perceived nothing in her movements indicative of any disease of the knee, and, so far as he could see, she walked naturally and gracefully; there is no permanent injury perceptible; she walks well enough.

It is true, there is some conflict in the testimony, and it is the acknowledged province of the jury to adjust such conflicts, but they are not to take isolated facts in a case, but are to weigh the whole testimony, and must find as it preponderates. We think it greatly preponderates against this finding, to the

Scholfield, Ch. J., and Scott and Dickey, JJ., dissenting.

extent found.  It can not be truthfully averred, on this testimony, that it will require twenty-five hundred dollars to compensate her for the injury occasioned by the carelessness, not wilful, of the railroad company, in not keeping their platform in good order.  Twenty-five hundred dollars is a very large sum of money, which few men or women accumulate in a lifetime.  Appellee is in no way incapacitated from performing all the labor attaching to her position, and a much less sum would, in our opinion, be ample compensation for the pain and injury she has received, and expenses incurred.  All beyond compensation is excessive, and indicates that the jury might have been influenced by prejudice and partiality, which is easily aroused when a female is complaining and a corporation defending.  We think injustice has been done by the verdict, and there should be a new trial.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*

Mr. Justice Scott:  I dissent from both the reasoning and conclusion of this opinion.  The evidence as to the extent of the injuries suffered by plaintiff is conflicting, and as the case was submitted on proper instructions, the verdict ought to be permitted to stand.  Any other rule is simply to deprive a party of the benefit of a trial by jury—a right secured by law.

Mr. Chief Justice Scholfield and Mr. Justice Dickey concur that the damages are excessive, but do not concur in all the argument in this opinion.